OPINION
{¶ 1} Defendant-appellant Marcus D. McComb appeals from his conviction and sentence, following a no-contest plea, upon one count of Possession of Cocaine. In the trial court, McComb's argument in support of his motion to suppress was predicated entirely upon his contention that there was an insufficient basis for stopping the car in *Page 2 
which McComb was a passenger and drugs were found. On appeal, McComb makes the additional argument that the State did not present sufficient evidence at the hearing to justify an inventory search of the car, during which the drugs were found. We find both arguments to be without merit. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} The facts, as found by the trial court, are as follows:
 {¶ 3} "The Court finds by the preponderance of the evidence that on September 13, 2006 Officer [Patrick] Bell was investigating a separate theft incident at 522 Campbell Street in the City of Dayton, Montgomery County, Ohio and while standing outside that address, observed and heard a maroon and grey Chevrolet Caprice automobile and its occupants proceed by at a high rate of speed [sic] with loud music emanating therefrom. Officer Bell wrote down the license plate number of the vehicle and about 15 minutes later, left the scene of the Campbell Street investigation and found the same vehicle nearby on Wisconsin Blvd. near Stewart Street and affected [sic] a traffic stop by illuminating his emergency lights. Upon approaching the subject vehicle, Officer Bell noticed furtive and concealing-type gestures made by the passenger who was removed with the driver for officer safety. Each of the occupants of the vehicle were [sic] asked for identification and neither was able to produce a driver's license. The driver was questioned concerning the sound emanating from the vehicle. Anthony McLaughlin, the driver, was arrested on a check for driving under suspension warrant. After being removed from the vehicle for officer safety the passenger, Defendant [McComb] herein, *Page 3 
was patted down for weapons. At the point at which McLaughlin was arrested on a driving under suspension warrant, and Defendant not having a driver's license, the vehicle was towed after an inventory search was accomplished. In the vehicle under the passenger seat at the point where the Defendant was seated as passenger and was seen making furtive and concealing movements, two baggies were found, one of which had a ripped corner and near the ripped corner was a piece of crack [cocaine]. At this point, the Defendant was arrested for possession of drugs. Defendant was then transported to the Montgomery County Jail and during process at the jail, additional crack was found in the toe of his shoe."
 {¶ 4} We have reviewed the transcript of the suppression hearing, and there is evidence in the record to support these findings.
 {¶ 5} McComb was charged by indictment with one count of Possession of Cocaine, a felony of the third degree. He moved to suppress the evidence, contending that it was obtained as the result of an illegal search and seizure. Following a hearing, McComb's motion to suppress was overruled. McComb then pled no contest, a judgment of conviction was entered, and he was sentenced accordingly.
 {¶ 6} From his conviction and sentence, McComb appeals.
 II {¶ 7} McComb's sole assignment of error is as follows:
 {¶ 8} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS GAINED AGAINST APPELLANT IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS PURSUANT TO THE FOURTH, FIFTH, SIXTH, AND *Page 4 
FOURTEEN[TH] AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS COMPARABLE PORTIONS OF THE OHIO CONSTITUTION."
 {¶ 9} In support of this assignment of error, McComb makes three arguments:
 {¶ 10} "1. At the time of the stop in question, Officer Bell lacked a reasonable articulable suspicion of criminal activity to justify making a traffic stop of the vehicle in which Appellant was sitting as a passenger;
 {¶ 11} "2. That there is an absence of facts upon which the Court can determine that a valid inventory search was made; and
 {¶ 12} "3. That contradictory testimony as to when, or whether, Appellant was free to leave, is consistent, within the totality of the circumstances, to support that Officer Bell conducted the inventory of the subject vehicle as a pretext for a warrantless investigatory search."
 A. The Propriety of the Stop {¶ 13} McComb first asserts that Officer Bell lacked a reasonable and articulable suspicion justifying a traffic stop because he did not stop the car that he had heard in apparent violation of the City of Dayton's noise ordinance until fifteen minutes after he heard it. McComb produces no authority in support of his proposition that a traffic stop is unreasonable if the stopping officer waits fifteen minutes until after observing the violation before initiating the stop. We are not aware of any authority in support of this proposition.
 {¶ 14} Officer Bell was in the middle of a theft investigation when he heard the car in which McComb was a passenger drive by in apparent violation of the noise ordinance. *Page 5 
In our view, it was reasonable for him to write down the license plate number of the offending car, but not otherwise to interrupt his ongoing theft investigation. When he came upon the car fifteen minutes later, it was reasonable for Officer Bell to stop it to issue a citation for the noise violation that he had heard.
 B. The Propriety of the Inventory Search. {¶ 15} Because the driver of the car was driving with a suspended license, and because McComb, the passenger, had no driver's license, Officer Bell decided that the car would have to be towed. He and his fellow officer, Officer Hamby, conducted an inventory search prior to the tow.
 {¶ 16} At the conclusion of the suppression hearing, McComb's trial attorney stated the basis for his argument that the evidence should be suppressed:
 {¶ 17} "MS. DENSLOW [representing the State]: No, your Honor. I would just state for the record that it was my understanding the basis of the motion was the stop of the vehicle. There was also evidence that was obtained as a result of a search done at the jail, but it was my understanding we weren't addressing that. If Defense does want to address that, the State would ask that the matter be continued to bring that witness here.
 {¶ 18} "THE COURT: Mr. Livingston.
 {¶ 19} "MR. LIVINGSTON [McComb's attorney]: Your Honor, Ms. Denslow stated that correctly. Our contention is that the stop was illegal and I think the evidence showed that. At the time the stop was made, there was no illegal activity going on. And the officer stated that he heard loud music at a prior time and place. But at the time he *Page 6 
pulled up onto the scene, the car was parked legally. There was no loud music coming from him. There was no basis for them to activate their lights. There was no basis for them to come up and interact with the individuals in the vehicle.
 {¶ 20} "And that's our whole contention, is that that stop, right then and there, was illegal. The officer testified that he didn't have a radar gun. The officer testified that they did not phone in to dispatch to let them know that they saw another vehicle with the license plate and the description so that another officer could interact with that vehicle at the time they first encountered them.
 {¶ 21} "When they stopped the vehicle, the gray and maroon Chevy Caprice, they were breaking no laws. They were doing nothing illegal. On that basis, I think the evidence — the stop has to be deemed illegal and all the evidence that follows after that stop has to be suppressed.
 {¶ 22} "THE COURT: Do you have any evidence to present on behalf of defendant?
 {¶ 23} "MR. LIVINGSTON: No, your Honor.
 {¶ 24} "THE COURT: Okay. So I understand that you're — under the circumstance where an officer observes illegal activity and there's a 15-minute delay between the time of direct observation by the officer and arrest or stop, then that's improper.
 {¶ 25} "MR. LIVINGSTON: My contention is that it was a minor misdemeanor.
 {¶ 26} "THE COURT: Yeah.
 {¶ 27} "MR. LIVINGSTON: Which is punishable, you know, one hundred dollar fine. *Page 7 
 {¶ 28} "THE COURT: Right.
 {¶ 29} "MR. LIVINGSTON: And, you know, there was no evidence that they had any type of sound unit to hear how, actually how loud the music was. He just saw the vehicle for a brief second, and this offense is so minor that it wasn't even worthy of calling in backup to have someone else, other officers, come in and stop the vehicle.
 {¶ 30} "I mean, quite frankly, you know, it could have been days, weeks or months before he ever saw this vehicle again, and for a minor misdemeanor, I don't know that it's proper that if it had been two months, whether it's 15 minutes or two months down the road, for them to say, oh yeah, I remembered this ticket at that place and time.
 {¶ 31} "THE COURT: Do you have any statute, case, police regulation or anything else, frankly, to substantiate the fact that 15 minutes is too long to wait to make a traffic stop on a minor misdemeanor?
 {¶ 32} "MR. LIVINGSTON: Not with me today, your Honor.
 {¶ 33} ". . . .
 {¶ 34} "THE COURT: Mr. Livingston, is it — and I want to make sure I'm understanding your point. Is it the delay that you're complaining of?
 {¶ 35} "MR. LIVINGSTON: It's a number of factors, your Honor. It's the fact that it's a minor misdemeanor, and this case is not, it's not even worthy of them calling it in to have another cruiser come by and find these individuals while the alleged violation is occurring. And then, at the time it's actually — the car is pulled over, is 15 minutes and there's no loud music at that point. The car's parked legally. The occupants of the vehicle are doing nothing wrong. Quite frankly, I think it's probably just a pretext just to *Page 8 
pull them over and search them at this point, your Honor."
 {¶ 36} Whereupon, the trial court gave McComb time to file a post-hearing memorandum. In his post-hearing memorandum, McComb addresses the propriety of the stop, exclusively. The propriety of the inventory search of the car is not addressed. The memorandum concludes:
 {¶ 37} "Thus, at the time of the seizure, no reason existed for the officer to believe that Defendant or anyone in the vehicle was committing a crime or about to commit a crime. In fact, the purported basis for the stop, loud music, was not now a basis. No loud music was playing at that time. Since there was no probable cause or reasonable suspicion to believe that Defendant was engaged in or about to engage in criminal activity when the stop actually occurred, Terry dictates that the evidence must be suppressed. Terry v. Ohio, 392 U.S. 1 (1968)."
 {¶ 38} In his brief on appeal, for the first time, McComb contends that the record does not support the propriety of the inventory search of the car, independently of the propriety or impropriety of the initial stop. We conclude that the issue of the propriety of the inventory search has not been preserved for appellate review.
 {¶ 39} Even if we were to consider the propriety of the inventory search, there is evidence in the record from which it can be found that a proper inventory search occurred, assuming that the initial stop was proper. Officer Bell's testimony concerning the inventory search is as follows:
 {¶ 40} "Q. Okay. After placing the driver under arrest, what did you do next?
 {¶ 41} "A. At this point, due the driver being under arrest, we called for a tow for *Page 9 
the vehicle.
 {¶ 42} "Q. And what was the reason for doing that?
 {¶ 43} "A. It's our policy. The — should the driver of the vehicle be placed under arrest, the vehicle's towed, impounded. There was no licensed driver on scene. The owner of the vehicle wasn't on scene, so we towed the vehicle-
 {¶ 44} "Q. Okay.
 {¶ 45} "A. — for safekeeping.
 {¶ 46} "Q. Okay. And do you conduct any type of inventory of the vehicle prior to the tow?
 {¶ 47} "A. That's correct.
 {¶ 48} "Q. Did you do that in this case?
 {¶ 49} "A. Yes.
 {¶ 50} "Q. And did you, yourself, conduct that inventory?
 {¶ 51} "A. Basically, check all the areas of the vehicle. Look for anything of value that we can place on the report, so if anything turns up missing it'll be documented so they can make a complaint later if something's stolen, something's stolen or taken.
 {¶ 52} "Q. Okay. Do you generally — if there's someone in the car, do you generally remove them prior to conducting this inventory search?
 {¶ 53} "A. All the time, yes.
 {¶ 54} "Q. Okay. And did you do that in this case?
 {¶ 55} "A. Yes. *Page 10 
 {¶ 56} "Q. Okay. Who actually removed the passenger from the vehicle?
 {¶ 57} "A. Officer Hamby and I both approached the passenger side, asking him to step from the vehicle. He stepped out willingly.
 {¶ 58} "Q. Okay.
 {¶ 59} "A. When he exited the vehicle, I looked onto the seat below his left leg and there was two small baggies, real tiny ripped off baggies, looked like they had what appeared to be cocaine residue on them. They appeared to be ripped off like the end of a Ziploc bag. They're both laying right on the seat under his leg. At that point, I suspected there was drugs involved in that — at that point, I told Hamby to secure him, pat him down, and I recovered what I saw on the seat."
 {¶ 60} Bell testified that the inventory search was performed because the car was going to be towed. Bell's testimony concerning the nature of the inventory search performed was brief, and it is not altogether clear whether he was describing the nature of an inventory search in general, as prescribed by the regulations and policies of the Dayton Police Department, or whether he was describing the particular nature of the inventory search he performed in this case. Any deficiencies in this regard are understandable in view of the fact that the State was led to believe that the challenge to the search and seizure of the evidence went to the propriety of the initial stop, exclusively.
 C. The Issue of Whether McComb Was Free to Leave. {¶ 61} In our view this is a red herring. The propriety of the inventory search did *Page 11 
not depend upon whether McComb was free to leave. McComb had no driver's license. Therefore, the arrest of the driver of the car resulted in the car having to be towed, which, in turn, led to the inventory search. The inventory search would have been conducted whether or not McComb was free to leave. It resulted in the discovery of crack cocaine in the passenger area where McComb had been sitting. This, in turn, led to McComb's arrest.
 {¶ 62} McComb's sole assignment of error is overruled.
 III {¶ 63} McComb's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 BROGAN and DONOVAN, JJ., concur. *Page 1