[Cite as *State v. Ward*, 2011-Ohio-3183.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 10 CO 28 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| KIMBERLY R. WARD | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:           Criminal Appeal from the Court of
                                    Common Pleas of Columbiana County,
                                    Ohio
                                    Case No. 09 CR 214

JUDGMENT:                           Affirmed.

APPEARANCES:

For Plaintiff-Appellant:            Atty. Robert Herron
                                    Columbiana County Prosecutor
                                    Atty. Tammie M. Jones
                                    Assistant Prosecuting Attorney
                                    105 South Market Street
                                    Lisbon, Ohio  44432

For Defendant-Appellee:             Atty. Douglas A. King
                                    Hartford, Dickey & King Co., LPA
                                    91 West Taggart Street
                                    P.O. Box 85
                                    East Palestine, Ohio  44113

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                                    Dated:  June 16, 2011

WAITE, P.J.

{1}    The Appellant in this case is the State of Ohio, appealing the decision of the Columbiana County Court of Common Pleas to sustain a motion to suppress in a felony drug case.  Appellee was charged with one count of possession of heroin. The charge arose from a police traffic stop in East Liverpool, Ohio.  The defendant, Kimberly Ward ("Appellee"), had just pulled her vehicle away from the parking lane of a street in downtown East Liverpool when she was stopped by an East Liverpool police patrolman.  Appellee gave false identification information to the officer and was ultimately arrested for falsification.  Her vehicle was inventoried prior to being towed, and a substance that appeared to be heroin was discovered in the vehicle, leading to the felony drug possession charge.

{2}    Appellee subsequently filed a motion to suppress.  At the suppression hearing, the patrolman stated that he stopped the vehicle for failure to use a turn signal when leaving a street parking space.  The trial court did not believe the patrolman's testimony and ruled that there was no probable cause for the traffic stop. Appellant contends that the trial court used the wrong standard for determining whether evidence derived from the traffic stop should be suppressed.  Appellant argues that the court should have determined whether there was reasonable and articulable suspicion to make the stop based on the totality of circumstances. Although Appellant is correct that reasonable articulable suspicion is one standard used for evaluating the propriety of a traffic stop, courts also apply the probable cause standard when reviewing pretextual traffic stops.  In this case, though, the

prosecutor informed the court that the matter under review was probable cause, and the testifying officer himself stated that the sole basis for the stop was an alleged turn signal violation, thus making probable cause the appropriate standard. It is also clear that, even if we apply the reasonable articulable suspicion standard, the facts of the case do not support reversing the trial court's judgment. The judgment of the trial court is, therefore, affirmed.

<u>History of the Case</u>

**{3}** On or about May 1, 2009, East Liverpool Patrolman Fred Flati observed Appellee's vehicle parked just outside the Town Tavern Bar on Market Street in downtown East Liverpool. He saw a woman standing next to the passenger window of the vehicle engaging in what he believed was some type of drug transaction. (Tr., p. 8.) Patrolman Flati knew that this was a high drug trafficking area. (Tr., p. 9.) Patrolman Flati turned his police cruiser around, and as he did so, the pedestrian fled and Appellee pulled out of the parking space. Patrolman Flati initiated a traffic stop and asked for Appellee's identification documents. (Tr., p. 12.) Appellee falsified her identity, giving a wrong name, date of birth and Social Security number. Upon further investigation and questioning of the passenger, Patrolman Flati was able to obtain Appellee's correct name. (Tr., p. 14.) Appellee was arrested for falsification. Patrolman Flati conducted an inventory of her vehicle prior to having it towed to the impound lot, and during the inventory search he discovered several packets of heroin inside a camera case. (Tr., p. 16.) Patrolman Flati did not obtain a warrant to search the vehicle or have Appellee sign a consent form. (Tr., p. 34.) He relied on the East

Liverpool Police Department's policy to inventory towed vehicles for the basis of his search. (Tr., pp. 16-17.)

{4} On October 29, 2009, Appellee was indicted in the Columbiana County Court of Common Pleas for possession of heroin and possession of clonazepam, in violation of R.C. 2925.11(A). The heroin charge was a fifth degree felony, and the second charge was a first degree misdemeanor.

{5} On July 2, 2010, Appellee filed a motion to suppress evidence obtained from the traffic stop. Appellee argued that there was no probable cause or reasonable articulable suspicion of criminal activity to justify the traffic stop, and that the search of the containers in the vehicle could not be justified under the law governing inventory searches. A suppression hearing took place on August 6, 2010. Patrolman Flati was the only witness at the hearing.

{6} Officer Flati testified that he saw a female pedestrian engaging in what he suspected was a drug deal with the passenger in Appellee's vehicle while it was parked on Market Street in East Liverpool. He described the location as a high drug trafficking area based on his training and experience. He testified that he turned his cruiser around to talk to Appellee, and that Appellee had "moved slightly away from the curb" before stopping to speak to Patrolman Flati. (Tr., p. 12.) Flati testified that he did not tell the pedestrian to stop, nor did he physically attempt to stop her. (Tr., p. 19.) He did not ask about the pedestrian when he spoke to Appellee. (Tr., p. 19.) There was no mention that he asked Appellee or her passenger about the pedestrian in his police report. (Tr., p. 19.)

**{7}** Patrolman Flati gave contradictory testimony about the reasons for the stop. He initially testified that his suspicions were aroused by the unknown exchange between the pedestrian and passenger in Appellee's vehicle, and that he wanted to further investigate what he had seen. (Tr., pp. 9-10.) On cross-examination, though, he testified that he stopped the vehicle solely because the driver did not use a turn signal when leaving its parking space:

**{8}** "Q. And this car was properly parked; is that correct?

**{9}** "A. It was at the time, yes.

**{10}** "Q. And you then effected a stop and ordered these people because you claim that the car tried to leave without putting a turn signal on from the parking space, the properly parked parking space?

**{11}** "A. Correct.

**{12}** "Q. And that is what caused you to stop this vehicle?

**{13}** "A. Yes." (Tr., pp. 19-20.)

**{14}** Officer Flati's police report does not mention the alleged turn signal violation, and Appellee was not charged with any traffic violation. (Tr., p. 35.)

**{15}** During cross-examination, the court asked Patrolman Flati a few questions:

**{16}** "THE COURT: Now help me here. They are pulling away and they're going in the direction that the car is pointed in; is that correct?

**{17}** "THE WITNESS: Correct. Yes.

**{18}** "THE COURT: It's exiting a parking space without using a turn signal?

**{19}** "THE WITNESS: Yes, sir.

**{20}** "THE COURT: Now, do you make a lot of arrests for that in a year?

**{21}** "THE WITNESS: I write some citations for failure to use turn signals.

**{22}** "THE COURT: In a situation like that where they are leaving a parking spot?

**{23}** "THE WITNESS: I have in the past. I have in the past. Not a lot, but I have.

**{24}** "THE COURT: About how long has it been since you issued one of those?

**{25}** "THE WITNESS: Uh, I don't recall.

**{26}** "THE COURT: Would it be months –

**{27}** "THE WITNESS: Probably a few years, I would say." (Tr., pp. 29-30.)

**{28}** On redirect, Patrolman Flati stated that he planned to stop the vehicle regardless of the turn signal violation simply to check out his suspicions. (Tr., p. 31.) The patrolman's police report, and the East Liverpool Police Department's "towed and impounded vehicle policy", were admitted into evidence.

**{29}** The trial court sustained the motion to suppress on August 16, 2010. The court found the testimony regarding the turn signal violation to be less than credible because it was not mentioned in the police report and no traffic citation was issued. (8/16/10 J.E., p. 2.) The court stated that "the testimony that the Defendant was stopped for a turn signal violation to be less than credible * * *." (8/16/10 J.E., p. 2.) The trial court found no basis for the traffic stop and sustained the motion to

suppress. The court's judgment entry stated that "this stop was not based on probable cause and therefore, any and all evidence obtained following the same is the fruit of an unconstitutional search and seizure." (8/16/10 J.E., p. 3.) This timely appeal followed.

<u>ASSIGNMENT OF ERROR</u>

**{30}** "THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE BY APPLYING THE INAPPROPRIATE STANDARD IN FINDING THAT THE INVETIGATORY [sic] TRAFFIC STOP WAS UNCONSTITUTIONAL."

**{31}** This appeal attempts to overturn a trial court's ruling on a motion to suppress. Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶100. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson* (2000), 137 Ohio App.3d 847, 850, 739 N.E.2d 1249. "The trier of fact is free to believe or disbelieve all or any of the testimony." *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, ¶45. When an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *Roberts* at ¶100, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. The appellate court must then review the application of the law to the facts de novo. Id., citing *State v. Burnside*, 100 Ohio St.3d 152, 797 N.E.2d 71, 2003-Ohio-5372, ¶8.

{32} Appellant contends that the standard that a trial court should use in determining whether a traffic stop is lawful under the Fourth Amendment is whether the officer had a reasonable and articulable suspicion criminal activity had occurred or was occurring. Appellant submits that the trial court used the wrong standard when the judge evaluated the legality of the traffic stop for probable cause, and by doing so, erroneously determined that the traffic stop violated the Fourth Amendment. Appellant also asserts that the trial court should not have looked only at the alleged traffic violation as the basis for the stop. Appellant submits that there was reasonable and articulable suspicion that a drug exchange had taken place, and that this should have justified the traffic stop even if there was no probable cause to stop the vehicle due to a traffic violation.

{33} The Fourth Amendment to the United States Constitution provides protection against unreasonable searches and seizures, and specifically states that "no Warrants shall issue, but upon probable cause * * *." Section 14, Article I, Ohio Constitution offers substantially the same protections. For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. *State v. Moore* (2000), 90 Ohio St.3d 47, 49, 734 N.E.2d 804. This requires a two-step analysis. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed. Id., citing *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. It is well

established that searches conducted without probable cause and a warrant are per se unreasonable, subject to certain "jealously and carefully drawn" exceptions. *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶10, citing *Jones v. United States* (1958), 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Probable cause is " 'a reasonable ground for belief of guilt.' " *Carroll v. United States* (1925), 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543. Probable cause exists if " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " (Emphasis omitted.) *State v. Carlson* (1995), 102 Ohio App.3d 585, 600, 657 N.E.2d 591, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 214, 103 S.Ct. 2317, 76 L.Ed.2d 527. Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate. *State v. Welch* (1985), 18 Ohio St.3d 88, 92, 480 N.E.2d 384.

**{34}** The defendant bears the initial burden to demonstrate that a search was conducted without a warrant. *Coolidge* at 455; *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889. If the defendant demonstrates that the search was warrantless, the burden then shifts to the government to demonstrate that the search fell within an exception to the warrant requirement. Id. at 218, citing *State v. Kessler* (1978), 53 Ohio St.2d 204, 373 N.E.2d 1252. The Ohio Supreme Court has recognized these exceptions to the requirement that a warrant be obtained prior to a search: (a) a search incident to a lawful arrest; (b) consent signifying waiver of

constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) exigent circumstances; (f) the plain-view doctrine; (g) the automobile exception; and (h) an administrative search, e.g., an inventory search of an automobile. *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 51, 19 OBR 42, 482 N.E.2d 606; *Stone v. Stow* (1992), 64 Ohio St.3d 156, 164, 593 N.E.2d 294, fn. 4; *State v. Moore* (2000), 90 Ohio St.3d 47, 51, 734 N.E.2d 804. There was no question that the traffic stop and search in this case were conducted without the benefit of a warrant, and the burden shifted to the state to establish the legality of the warrantless search. In this case, the state needed to establish the validity of both the initial traffic stop and the subsequent inventory search of the vehicle (along with the containers in the vehicle), which resulted in the discovery of narcotics.

{35} There are two basic standards applied to determine whether police have legitimately stopped a vehicle. First, police may stop a vehicle based on probable cause that a traffic violation has occurred: "[W]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 11, 665 N.E.2d 1091. This type of traffic stop is valid "regardless of the officer's underlying subjective intent or motivation for stopping the vehicle," i.e., even if the traffic stop was a pretext for investigating some other suspicious behavior. Id. at 12. Second, police may make

an investigative stop of a vehicle when they have a "reasonable articulable suspicion" that criminal activity has occurred. Id.; see, also, *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660; *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621. Thus, an officer who lacks probable cause, but who reasonably suspects that a particular person's behavior is criminal, may detain a person briefly to investigate the circumstances that provoked the suspicion. *Berkemer v. McCarty* (1984), 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317.

**{36}** Brief investigative stops based on reasonable and articulable suspicion are typically referred to as *Terry* stops based on the aforementioned case of *Terry v. Ohio*. To support a *Terry* stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Bobo* (1988), 37 Ohio St.3d 177, 178, 524 N.E.2d 489. "In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which would warrant a man of reasonable caution in the belief that the action taken was appropriate." *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141. In forming reasonable articulable suspicion, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *United States v. Arvizu* (2002), 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740, quoting *Cortez*, supra, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621.

**{37}** Although the probable cause standard is a more stringent standard than reasonable suspicion, the two standards often exist together when a traffic stop is made. "[A]n officer who witnesses a traffic violation possesses probable cause, and a reasonable articulable suspicion, to conduct a traffic stop." *State v. Jenkins*, 3d Dist. No. 14-10-10, 2010-Ohio-5943, ¶12. An officer's observation that a vehicle failed to properly use a turn signal constitutes both reasonable suspicion and probable cause to justify a traffic stop. See *State v. McComb*, 2d Dist. No. 21963, 2008-Ohio-425; *State v. Steen*, 9th Dist. No. 21871, 2004-Ohio-2369.

**{38}** Evidence that is directly derived from exploiting an illegal traffic stop or arrest is inadmissible at trial and must be suppressed. *State v. Henderson* (1990), 51 Ohio St.3d 54, 56, 554 N.E.2d 104; *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

**{39}** Appellant contends that the initial traffic stop was based on reasonable and articulable suspicion, and concludes that the trial court should not have relied on the probable cause standard to make its final determination. As a preliminary matter, the state appears to have invited any error that may have occurred in the trial court's judgment entry with respect to its use of the phrase "probable cause." The doctrine of invited error holds that a litigant may not take advantage of an error which he himself invited or induced. *State v. Campbell* (2000), 90 Ohio St.3d 320, 324, 738 N.E.2d 1178. At two points during the suppression hearing the prosecuting attorney specifically stated to the court that the issue being resolved was whether there was probable cause for the stop:

**{40}** "THE COURT: All right. Is the State content to begin the evidence?

**{41}** "MS. JONES: Your Honor, as I review the motion, I believe that it sets forth issues relative to probable cause for the initial approach of the officer and then the search itself.

**{42}** "MR. HARTFORD: Correct. That's correct.

**{43}** "MS. JONES: Then I'm ready to proceed with that understanding, your Honor."

**{44}** "* * *

**{45}** "MS. JONES: My understanding is that the purpose of this motion is to challenge the search that occurred - -

**{46}** "MR. HARTFORD: That's exactly - -

**{47}** "MS. JONES: - - as well as the probable cause for the stop. * * *" (Tr., pp. 3, 25.)

**{48}** Furthermore, the state presented no legal theory to the trial court as to why the motion to suppress should be denied. The state filed no memorandum in opposition to the motion, and presented no opening or closing argument at the suppression hearing explaining how the facts or the law supported the state's position. If the state had some objection to the trial court determining probable cause and resolving the case on that basis rather than on reasonable and articulable suspicion, it should have raised this matter during the trial court proceedings rather than waiting for this appeal to first raise its objection. This is a particularly egregious

failure considering that the prosecutor instructed the court at the suppression hearing that the matter under review was probable cause.

{49} Although the state would like us to focus primarily on a possible error of law in this case (and as will be explained below, it does not appear that any error of law took place), the outcome of this appeal is ultimately dependent on the trial court's interpretation of the facts and circumstances of the traffic stop. Since we review the court's judgment as to the facts for abuse of discretion, and because we defer to the trial court's factual determinations in resolving a suppression motion, we are not at liberty to simply reinterpret the evidence as characterized by Appellant. We may not overrule a trial court's determination on this issue simply because we would not have similarly ruled. Just as we defer to the trial court's interpretation of the facts when it overrules a motion to suppress, we also defer to the trial court's credibility determinations when it grants a motion to suppress. We have noted that the state's only witness gave contradictory testimony regarding the basis for making the traffic stop. Part of the testimony indicates that the officer was curious about a suspicious exchange between the passenger in Appellee's vehicle and a passing pedestrian. Other parts of his testimony unequivocally state that the reason he stopped Appellee's vehicle was because of an alleged traffic violation. This conflicting testimony raised credibility issues with the officer's testimony. It is quite clear from the record that the trial court did not believe the officer, and without the officer's evidence there is no factual basis on which to rule in the state's favor in this appeal.

**{50}** Appellant correctly states that the propriety of an investigative stop must be viewed in light of the totality of the surrounding circumstances. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶7. Appellant would like us to focus our attention on the suspicious circumstances surrounding the presence of the pedestrian, along with the vague exchange or transaction that may have taken place at the passenger side of the vehicle, to conclude that there was reasonable articulable suspicion to make a traffic stop. We must obviously overlook other aspects of the totality of the circumstances to draw this conclusion. We must overlook the fact that this mystery pedestrian was not identified, nor did Patrolman Flati ever attempt to identify her, detain her, find her or talk to her. (Tr., p. 19.) We must also overlook the absolute lack of particulars about the supposed transaction. Although the state points out that the area where the alleged exchange took place was known for drug trafficking, this is only one fact among many that is reviewed when ruling on the propriety of a *Terry* stop in situations where the stop occurred in a high drug trafficking area. In *State v. Bobo*, for example, the Ohio Supreme Court found the following facts to be significant in addition to the reputation of the area as a high crime area: that the stop was late at night; that the officer observed furtive motions and gestures in that Bobo was "popping up and then ducking down or leaning forward"; and that the officer had training and experience in investigating drug transactions. *Bobo*, 37 Ohio St.3d at 179-180, 524 N.E.2d 489.

**{51}** Other types of facts that are important in reviewing *Terry* stops in high drug trafficking areas are whether there was money changing hands, or whether the

officer saw drugs or other contraband being exchanged. See, e.g., *State v. Delagraza* (2001), 144 Ohio App.3d 474, 479, 760 N.E.2d 860. It may also be significant whether the vehicle was parked illegally or in such a way as to conceal it from view. *State v. Hall* (Mar. 24, 1994), 8th Dist. No. 64887; *State v. McClendon* (Dec. 8, 2009), 10th Dist. No. 09AP-554.

**{52}** In the instant case, there was no mention that the supposed exchange was somehow furtive or hidden. There was no mention of the officer seeing money or drugs being exchanged, but only that he thought some type of transaction took place. The stop took place in the middle of the afternoon, not late at night. The vehicle was legally parked on a public street. These are all facts that support the trial court's decision to grant the motion to suppress.

**{53}** The state emphasizes that, according to Patrolman Flati, the pedestrian left abruptly or hurriedly when she spotted the police cruiser, but it is not clear how this is relevant if there was no other indication of criminal activity. The patrolman was not concerned enough about the pedestrian to ask her to halt, nor did he attempt to discover who she was or question her. (Tr., p. 19.) It is not considered to be criminal activity, in and of itself, to turn and walk away at the sight of a policeman or a police cruiser, so this particular fact may not justify a *Terry* stop. *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497.

**{54}** Looking at the totality of the circumstances of this case (other than the evidence regarding the turn signal violation), and even assuming everything in Patrolman Flati's testimony is true, this alleged investigative stop appears

problematical to justify. Even if the police officer was experienced in dealing with drug crimes, and if the pedestrian had some type of exchange with the automobile passenger, and if the area where the stop was made was a high crime area, there are several other factors that weigh against legitimizing this particular stop.

**{55}** In this specific case, though, we do not have to engage in assumptions about whether the trial court believed the police officer. The record itself establishes that the trial court determined the officer was not credible and was not believed. The court's judgment entry directly states that the officer's testimony was "less than credible". Patrolman Flati gave conflicting testimony in this case about the reason for the traffic stop, which undermines his credibility. The trial court sifted through the contradictory testimony and determined how much of it, if any, was believable. It is up to the trier of fact to determine credibility, and our review consists only in finding some competent and credible evidence supporting the trial court's judgment. *Roberts*, supra, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶100. The court apparently had difficulty accepting that a traffic violation occurred because it was not in the patrolman's report and no ticket had been issued. The officer also stated, at least in part of his testimony, that the sole basis for the stop was the alleged traffic violation. The record here supports the factual basis that underlies the trial court's decision, and thus, there is no error in the court's legal conclusion that the sole basis for the stop was an alleged traffic violation, and that there was no probable cause that the traffic violation occurred.

{56} Finally, turning to the use of the phrase "probable cause" in the trial court's judgment entry, it does appear to be the correct standard based on the issue that was presented to the court. We have noted that the prosecutor indicated to the court that issue under review was probable cause. We reiterate that, in many traffic cases such as a turn signal violation, probable cause and reasonable suspicion amount to the same thing. We have reviewed Patrolman Flati's testimony in which he himself stated that he only initiated the traffic stop due to the alleged turn signal violation. We have referred to *Dayton v. Erickson*, which sets forth the probable cause standard for evaluating whether a pretextual traffic stop is valid. It does not appear from the context of this case that the trial court was required to engage in any further analysis of reasonable and articulable suspicion because the parties and the arresting officer narrowed the issue to whether there was probable cause that a traffic violation had occurred.

{57} Without some valid basis for the traffic stop, there was no basis to detain or arrest Appellee and no basis to tow her vehicle. Hence, there was no basis to conduct an inventory search of the vehicle. It is unclear whether the inventory search itself would survive constitutional scrutiny, particularly since it was conducted at the scene of the arrest rather than after the vehicle had been secured and towed, but we need not deal with this issue based on our decision to affirm the trial court's determination that the initial stop was invalid. The trial court did not believe the state's witness, and a proper legal basis for sustaining the motion to suppress was

stated by the trial court. For these reasons, we overrule Appellant's sole assignment of error.

Conclusion

**{58}** In this prosecutor's appeal, the state argues that the trial court used the wrong legal standard in sustaining a motion to suppress involving a traffic stop. We do not agree with Appellant. The state indicated to the court that probable cause was the relevant issue, and under *Dayton v. Erickson*, the trial court is to determine whether probable cause exists to support a pretextual traffic stop. The arresting officer testified that the basis for the stop was the traffic violation, and the trial court did not believe the officer's testimony. Accepting the trial court's factual finding, and applying the relevant law, we find no reversible error in the trial court's decision to sustain the motion to suppress. Appellant's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.