[Cite as *State v. Hilliard*, 2022-Ohio-2849.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

LINNIE L. HILLIARD fka LINNIE L. HILLIARDS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 BE 0024**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 19 CR 214

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed, Conviction Vacated and Remanded.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor, *Atty. Daniel P. Fry*, and *Atty. Joseph E. Rine*, Assistant Prosecuting Attorneys, 52160 National Road, St. Clairsville, Ohio 43950, for Plaintiff-Appellee

*Atty. Adam L. Myser*, Myser & Myser, 320 Howard Street, Bridgeport, Ohio 43912, for Defendant-Appellant.

Dated: August 8, 2022

**WAITE, J.**

**{¶1}** Appellant Linnie L. Hilliard appeals a May 19, 2021 Belmont County Court of Common Pleas judgment entry convicting him of possession of cocaine. Appellant argues that the affidavit used to obtain a search warrant in this matter is deficient. Even if this Court disagrees, Appellant argues that the search was improperly extended to his person, which was not authorized by the search warrant. Finally, Appellant argues that the trial court abused its discretion in sentencing. For the reasons provided, Appellant's argument regarding the affidavit has merit, rendering the remaining arguments moot. Appellant's conviction is vacated and the matter is remanded for a determination of whether sufficient evidence exists on which to try the case against Appellant.

Factual and Procedural History

**{¶2}** At the time of the instant offense, Appellant was under federally supervised release stemming from an unrelated conviction. The instant offense, which occurred on May 28, 2019, involved a drug investigation conducted by the Belmont County Major Crimes Unit consisting of Sgt. Randy Stewart, Deputy Sheriff Jason Schwarck, Deputy Dustin Hildabrand, and Deputy Brian Carpenter.

**{¶3}** A housekeeper at the St. Clairsville Red Roof Inn entered room 208 to clean the room. She noticed at the time that the smoke detector was covered and observed a loose, white, powdery substance on a counter. She told her manager about what she discovered in the room, but it is unclear how long after she left the room she spoke to her manager. At some point, the hotel manager called Sgt. Stewart, who was involved in an unrelated investigation and did not address the manager's concerns. The manager later contacted Dep. Schwarck and relayed the information given to him by the housekeeper.

The record does not show how much time that elapsed between the manager's call to Sgt. Stewart and his call to Dep. Schwarck. When Dep. Schwarck contacted Sgt. Stewart to advise him of the manager's call, Sgt. Stewart informed Dep. Schwarck that he had received a similar call from the manager earlier in the day.

**{¶4}** The officers were informed by the manager that a West Virginia driver's license in Appellant's name was linked to the room. The officers did not obtain or otherwise view the license or attempt to corroborate the manager's assertion. Dep. Schwarck later learned that Appellant had a criminal record that included drug and weapons charges. He apparently obtained a print out of the record to confirm these charges. The two officers decided to conduct surveillance on the hotel room and begin an investigation.

**{¶5}** At a suppression hearing in this case, it was testified that during surveillance, occupants who had been observed leaving the hotel room left the parking lot in two separate vehicles. The officers were unable to initiate a traffic stop of the first vehicle, but somehow learned that one passenger, S.M., had previously been jailed in Belmont County on drug charges. The officers successfully pulled over the second vehicle. It is unknown whether the two occupants in the second vehicle had prior criminal records. A search of this vehicle resulted in discovery of a burnt spoon, a digital scale, and unspecified pills. The record is silent as to whether charges resulted from that traffic stop, but it appears that those passengers provided no insight as to the activities that may have been conducted in room 208.

**{¶6}** Based on the information received from the Red Roof Inn manager and the surveillance, Dep. Schwarck obtained a search warrant for room 208, which was signed

at 8:55 p.m.  Significantly, the warrant was limited to room 208 and did not authorize a search of Appellant's person, or any other person.  The warrant specifically allowed a search for "illegal drugs, narcotics, money, cell phones, drug instruments, drug paraphernalia, any and all items related to drug trafficking."  (3/23/21 Motion to Suppress Hrg., pp. 35-36.)  The warrant specifically authorized a no-knock nighttime search.

{¶7}  The search team included Sgt. Stewart, Dep. Schwarck, Dep. Hildabrand, and Dep. Carpenter.  Dep. Schwarck, who provided the affidavit on which the warrant had issued, informed the team that a warrant had issued but did not tell them that it limited the search only to the room and did not authorize a search of Appellant's person.  The officers first attempted to enter the room with a key card, presumably supplied by the manager, but the door was latched with a chain.  Then they used a ram to force the door open and immediately located Appellant.  They tackled him to the ground and placed him in handcuffs.  At that time, the officers informed Appellant that he was being detained.

{¶8}  Dep. Carpenter conducted a frisk of Appellant's person and located what he immediately knew to be money inside one of Appellant's pockets.  When he removed the money from the pocket, drugs also fell out.  Dep. Carpenter continued his frisk and felt an object he immediately knew to be drugs near Appellant's buttocks.  He removed Appellant's pants and removed the drugs from Appellant.

{¶9}  Dep. Schwarck searched the room.  In plain view he located two digital scales on a table, empty ties-offs that are associated with the knotting and sealing of plastic baggies, and a pipe commonly used to smoke crack cocaine.  He also located a glass vial of suspected Phencyclidine ("PCP").  Testing later revealed the substance was, in fact, PCP.

{¶10} On August 26, 2019, Appellant was indicted on the following charges: trafficking in cocaine, a felony of the first degree in violation of R.C. 2925.03(A)(2), (C)(4), (F) with two specifications for forfeiture of a cellphone in a drug case in violation of R.C. 2941.1417(A) and one specification for forfeiture of money in a drug case in violation of R.C. 2941.1417(A); aggravated possession of drugs, a felony of the third degree in violation of R.C. 2925.11(A), (C)(1), (B); possession of cocaine, a felony of the first degree in violation of R.C. 2925.11(A), (C)(4), (E); and aggravated possession of drugs, a felony of the fifth degree in violation of R.C. 2925.11(A),(C)(1), (A).

{¶11} Appellant filed a motion to suppress based on deficiencies in the affidavit and the fact that the search warrant was expressly limited to a search of the hotel room, not his person.  The court agreed with Appellant as to the latter claim, but ruled in the state's favor based on the inevitable discovery doctrine.  According to the court, Appellant would have been searched once he was arrested based on the discovery of drugs in the hotel room, and a body scanner used at the jail would have detected the drugs located near his buttocks.  The court denied the motion to suppress in full.

{¶12} On May 7, 2021, Appellant pleaded no contest to possession of cocaine. The remaining charges were dismissed.  On May 19, 2021, the court sentenced Appellant to an indefinite term of imprisonment with a minimum of eleven years and a maximum of sixteen and one-half years.  The court awarded Appellant 241 days of jail-time credit.  The court imposed a five-year driver's license suspension and a mandatory five-year term of postrelease control.  The court also imposed $924 in costs, but waived the mandatory fine based on Appellant's established indigency.  The phones were found by the trial court to be subject to forfeiture (iPhone and Tracphone) and were ordered to be destroyed

following any appeal. The seized money ($497) was ordered to be allocated to the law enforcement trust fund for the Belmont County Major Crimes Unit (60%=$298.20) and the law enforcement trust fund for the Belmont County Prosecutor's Office (40%=$198.80). It is from this entry that Appellant timely appeals.

**{¶13}** Despite the fact that both the destruction of the phones and allocution of the money was to occur following appeal, we note that on November 23, 2021, the trial court ordered the destruction of the phones and placed the money into the respective trust accounts. In addition, the court acknowledged receipt of a request from Appellant to enter into a prison program for the purpose of performing community service in lieu of paying costs. The court denied this request due to the pendency of his appeal.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED BY FINDING THE AFFIDAVIT TO SECURE THE SEARCH WARRANT WAS NOT DEFECTIVE AND THEREFORE ERRED IN FINDING THE SEARCH WARRANT VALID.

**{¶14}** Appellant challenges whether the affidavit that secured the search warrant satisfied all legal requirements. Appellant explains that an affidavit must: describe the place to be searched, the objects to be searched for and seized, the offense believed to have been committed, and the facts giving rise to probable cause. Here, Appellant focuses his argument in this case on his contention that there were insufficient facts to support probable cause, but he also tangentially contests all of the other requirements. Appellant relies heavily on the failure of the officers to corroborate claims of the hotel staff members.

<u>Case No. 21 BE 0024</u>

**{¶15}** In response, the state relies on the sum of all of the information contained in the affidavit, rather than focusing on a single aspect. The state contends that the information given by the manager, coupled with the surveillance conducted by the officers, provided sufficient indication that drug activity was present in the hotel room.

**{¶16}** "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures and require warrants to be particular and supported by probable cause." *State v. Telshaw*, 195 Ohio App.3d 596, 2011-Ohio-3373, 961 N.E.2d 223 (7th Dist.), ¶ 12. In order for a search or seizure to be lawful, there must be probable cause to believe evidence of criminal activity will be found and the search or seizure must be executed pursuant to a warrant, unless an exception to the warrant requirement exists. *State v. Ward*, 7th Dist. Columbiana No. 10 CO 28, 2011-Ohio-3183, ¶ 33.

> In determining the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Quin*, 5th Dist. Licking No. 2021 CA 00044, 2021-Ohio-4205, ¶ 8, citing *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1980), at paragraph one of the syllabus; *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶17} "When oral testimony is not offered in support of a search-warrant affidavit, the magistrate determines the sufficiency by 'evaluating only [the facts alleged within] the four corners of the affidavit and [applying] an objective reasonableness standard.' " *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 39, citing *United States v. Richards*, 659 F.3d 527, 559 (6th Cir.2011), fn. 11 (Moore, J., concurring in judgment only); *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir.1996).

{¶18} "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " (Emphasis deleted.) *State v. George*, 45 Ohio St.3d 325, 329, 544 N.E.2d 640 (1989), citing *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*George* at 329, citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶19} The Ohio Supreme Court has cautioned reviewing courts that the standard of review is not *de novo*, but instead the court's conduct a review of whether the issuing magistrate or judge had a " 'substantial basis for * * * concluding' that probable cause existed." *George* at 329. Thus, the issue is whether the four corners of the affidavit sufficiently provided the issuing magistrate a substantial basis to conclude evidence of

specific drug activity would be found in hotel room 208 at the time the warrant was issued at 8:55 p.m. that day. More specifically, here, whether evidence of "drug trafficking" would be found.

**{¶20}** "A reviewing court affords great deference to the issuing judge's probable cause determination, and marginal cases are to be resolved in favor of upholding the warrant." *State v. Johnson*, 7th Dist. Mahoning No. 17 MA 0099, 2018-Ohio-2780, ¶ 16, citing *Castagnola* at ¶ 14; *George*, paragraph two of syllabus. "[T]he reviewing court is concerned exclusively with the statements contained within the affidavit itself." *Castagnola* at ¶ 39, citing *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir.1996).

**{¶21}** Appellant addresses and finds alleged deficiencies in each paragraph of the affidavit. The first paragraph states: "On 5/28/19 management from the Red Roof Inn contacted the Belmont County Sheriff's Office to report suspected illegal activity. I was advised that staff went into room 208 and observed a white powdery substance on a counter. It was also observed that the smoke detector was covered over." (3/18/21 Motion to Suppress, Exh. 1.)

**{¶22}** Appellant argues that there is nothing within the affidavit to indicate the veracity or truthfulness of the housekeeper or manager's claims. According to Appellant, the affidavit indicates that the hotel provided the officers with observations of possible "illegal activity." However, it contains no indication that Dep. Schwarck or any other officer made an attempt to corroborate the claims. Dep. Schwarck admittedly did not speak to the housekeeper to determine if what the manager relayed to him was true or accurate. The issue is whether the failure of the officers to include any information regarding the

veracity of the housekeeper or hotel manager and their subsequent reliance on the hotel staff in securing the warrant renders the warrant unlawful.

*{¶23}* Where an affidavit relies in whole or in part on hearsay information, the Twelfth District has explained that "while it is desirable to have the affiant provide as much information as possible from his own knowledge, practical considerations often require the affiant to rely on hearsay information and/or information provided by other sources." *State v. Redelman*, 12th Dist. Clinton No. CA2012-04-010, 2013-Ohio-657, ¶ 41, citing *State v. Young*, 12th Dist. Clermont No. CA2005-08-074, 2006-Ohio-1784, ¶ 21. The *Redelman* court emphasized "[t]he fact that the affiant's knowledge may be the result of double or multiple levels of hearsay does not, *per se*, invalidate the resulting search warrant." *Redelman* at ¶ 41*, citing *State v. Prater*, 12th Dist. Warren No. CA2001-12-114, 2002-Ohio-4487. The veracity or reliability of a hearsay statement can be corroborated through an independent police investigation. *Id.,* citing *Gates, supra.* However, "[t]he basis of knowledge and the veracity of the person supplying hearsay information are circumstances that must be considered in determining the value of the information and whether probable cause exists." *Redelman* at ¶ 41.

**{¶24}** Hence, we must analyze the entire affidavit to determine whether Dep. Schwarck, in his affidavit, provided any basis for his reliance on the veracity of the housekeeper and the manager's hearsay information to him or otherwise establishes that the housekeeper and manager's observations were corroborated through a police investigation or were verified in any other way.

**{¶25}** Further, an affidavit must " 'contain some information that would allow the magistrate to independently determine that probable cause presently exists-not merely

that it existed at some time in the past.'  Thus, a supporting affidavit that does not give any time frame for the events it describes fails, as a matter of law, to demonstrate probable cause, and a search warrant issued based solely on that affidavit is invalid." *State v. Hillegass*, 144 Ohio App.3d 108, 111, 759 N.E.2d 803 (1st Dist.2001), citing *State v. Lauderdale*, 1st Dist. Hamilton Nos. C-990294 and C-990295, 2000 WL 209395, *1 (Feb. 18, 2000); *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932).  The Ohio Supreme Court has also emphasized the importance of a timeline when obtaining a search warrant:  "Special considerations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched."  *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 34.

**{¶26}**  The affidavit, here, states that the call from the hotel staff occurred on May 28, 2019 but does not provide the time of day.  The housekeeper's discovery could have occurred at any time that day.  At the suppression hearing, Dep. Schwarck did not specify what time he received a call from the hotel manager, however, he noted that Sgt. Stewart informed him that he had received the same call "earlier in the day."  (3/23/21 Motion to Suppress Hrg., p. 21.)  The record contains information that there were two different calls to police after the discovery was made but is devoid as to the timing of the discovery, the time it was conveyed to the manager, and the timing of these calls.  It does appear that some amount of time had passed between the housekeeper's discovery and the officer's decision to initiate an investigation.  Significantly, the officers did not obtain the warrant until 8:55 p.m.  (3/23/21 Motion to Suppress Hrg., p. 30.)  Because the housekeeper's

discovery appeared to suggest that drugs were currently in the process of being possessed and consumed based on the loose powder and the covered smoke detector, the record contains the suggestion of staleness.

{¶27} In addition to the lack of timeline as to the discovery, subsequent calls to police, and the initiation of an investigation, according to the affidavit the officers "observed an individual with previous drug realted [sic] arrest leaving room 208." (3/18/21 Motion to Suppress, Exh. 1.) Specifically absent from the affidavit is any mention of the time this person arrived at and left room 208. While evidence of the time this person was observed entering the room could have reestablished timeliness, this critical information is missing. The affidavit also fails to provide any information regarding the nature of the visitor's offense and how long ago it was committed.

{¶28} Thus, this affidavit fails to establish at what time the housekeeper made her initial discovery, when she told her manager, when each of the officers were alerted by the manager to the discovery, how long the ensuing investigation took, and when the person with a "known drug history" arrived and left the hotel room. The only specific time in this record is the time the warrant was obtained, 8:55 p.m.

{¶29} Again, we emphasize that the observations relayed by the housekeeper appear to merely indicate the consumption of drugs. Dep. Schwarck averred in the affidavit that the evidence led him to believe that the hotel room contained evidence of drug possession, and the observations made by the housekeeper tend to suggest drug consumption or use. There is no temporal context in the affidavit to demonstrate that the suspected drug possession continued to exist at the time the warrant was sought and issued, and had not ended at some point in the past, instead. There is likewise no

Case No. 21 BE 0024

indication that drug trafficking may be taking place, based solely on the information provided by hotel staff.

**{¶30}** While an analysis of a warrant's legality focuses on the four corners of the underlying affidavit, it can be appropriate to look at testimony offered at a suppression hearing. *Castagnola* at ¶ 101*.* However, any additional information, inferences or assumptions that an officer may have had when drawing conclusions and to which he testifies during a suppression hearing must be supported with information and contained with a degree of specificity within the affidavit, or these cannot be considered by a judge in support of the search at a suppression hearing. *Id.* at ¶ 101-102.

**{¶31}** As earlier stated, failure to include any form of a timeline regarding the police investigation is fatal. According to caselaw, this error, alone, should cause the affidavit in this case to fail as a matter of law. See *Hillegass, supra; Castagnola, supra.* Even though this, alone, appears to invalidate the warrant, it is not the only deficiency in this affidavit.

**{¶32}** The second paragraph of the affidavit addresses Appellant's identity: "[r]ecords indicate room 208 is being rented by [Appellant]. [Det. Schwarck] was able to confirm his identity through hid [sic] West Virginia driver's license." (3/18/21 Motion to Suppress, Exh. 1.) Appellant contends that this statement is fatally unsupported as neither officer personally reviewed his driver's license, but testified that they instead relied exclusively on information given by the manager.

**{¶33}** Again, any hearsay in the affidavit must be supported by evidence of witness reliability or corroboration by some means. The question becomes whether Dep. Schwarck corroborated the hotel manager's identification of Appellant, and it appears he

did not. The problem is compounded when comparing Dep. Schwarck's affidavit to his testimony. While he never expressly stated he reviewed the driver's license himself in his affidavit, he strongly suggests this in his use of the language "I was able to confirm." This phrase indicates that Dep. Schwarck, himself, confirmed Appellant's identity through observation or review of Appellant's driver's license. At the suppression hearing, Dep. Schwarck conceded that he relied on the manager's description and never personally viewed the driver's license on record at the hotel or any other records pertaining to the room's registration. (3/23/21 Motion to Suppress Hrg., p. 44.) Again, while it can be appropriate to rely on hearsay evidence, Dep. Schwarck had access to hotel registration documents but chose not to confirm the manager's information, yet gave the impression he had in his affidavit. While this alone may not be fatal, this must be considered when viewing the information contained within the affidavit as a whole.

{¶34} The third paragraph of the affidavit states: "[w]hile surveilling the Red Roof Inn detectives observed an individual with previous drug realted [sic] arrest leaving room 208." (3/18/21 Motion to Suppress, Exh. 1.)

{¶35} The affidavit listed only one visitor and, as noted by Appellant, did not provide any details regarding how long this person was inside room 208. The affidavit does not provide details of this person's charges nor how long ago he was arrested. The affidavit also completely omitted any information about the subsequent stop of another vehicle associated with visitors to room 208 and which apparently resulted in the seizure of drugs. As this information was not included within the affidavit at all, it cannot be considered in deciding whether the warrant was properly issued. The only valid information in this regard is that one person with a prior, unspecified, drug related arrest

was inside the room for an unknown amount of time, and that visit may have been moments or hours before the warrant was secured.

**{¶36}** At the suppression hearing, the state attempted to bolster the information contained in the affidavit by clarifying that more than one person with a drug arrest history was seen visiting room 208. However, the affidavit was issued based on evidence of only one. As noted by the *Hillegass* court, a court is not permitted to rely on "bolstering" testimony from the state to supplement a deficient affidavit. *Hillegass* at 112.

**{¶37}** The fourth, and final paragraph states:

I have [sic] employed with the Belmont County Sheriff's Office for approximately 9 years. I am currently assigned to the Criminal Interdiction Unit and the Belmont County Major Crimes Unit, Narcotics Division. As such I have specialized training in drug offenses. My experience leads me to believe the crime of drug possession has taken place. This crime is a violation of Ohio Revised Code 2925.11. My experience further leads me to believe that evidence of said crime to be located at the Red Roof Inn 68301 Red Roof Ln. St. Clairsville, OH Room 208.

(3/18/21 Motion to Suppress, Exh. 1.)

**{¶38}** In the affidavit, Dep. Schwarck stated that he "noted that [Appellant] has been arrested and placed into the Belmont County Jail for drug possession and gun charges. This was also confirmed by a computerized crime history." (3/18/21 Motion to Suppress, Exh. 1.) Appellant argues that this portion of the affidavit contains a false assertion that he had previously been convicted of felony drug possession. He explains

Case No. 21 BE 0024

that his previous arrest involved a charge pertaining to drug abuse instruments, a misdemeanor and a far different crime.

**{¶39}** Dep. Schwarck conceded at the hearing that his affidavit is incorrect as it pertains to Appellant's prior drug charges. "To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard for the truth.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 31; citing *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992); *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). "Reckless disregard" means that the affiant had serious doubts about the truth of an allegation. *United States v. Williams*, 737 F.2d 594, 602 (C.A.7, 1984). Omissions count as a false statement if "designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate." (Emphasis deleted.) *United States v. Colkley*, 899 F.2d 297, 301 (C.A.4, 1990).

**{¶40}** Dep. Schwarck did not address how he first learned of Appellant's prior charges but claimed to have confirmed this through use of a computer search. At the suppression hearing, Dep. Schwarck acknowledged his error, but did not believe that the difference between drug possession (a felony) and possession of drug abuse instruments (a misdemeanor) was problematic, because they are both drug-related crimes.

**{¶41}** The issue is not necessarily the difference between the two offenses, but the fact that Dep. Schwarck averred to the judge in order to obtain a search warrant that Appellant had been arrested and jailed for a specific offense that he did not commit. That same offense, drug possession, is the offense that Dep. Schwarck informed the judge

that he believed was being committed in this case, and formed at least part of the basis on which he sought to obtain the warrant.

{¶42} This issue was recently addressed by the First District in *State v. Stonitsch*, 1st Dist. Hamilton No. C-200174, 2021-Ohio-2953, appeal not allowed, 165 Ohio St.3d 1493, 2021-Ohio-4515, 178 N.E.3d 525. In that case, the affidavit supporting the search warrant referenced a prior felony conviction for trafficking in drugs and possession of drugs. The state later conceded that the appellant had been convicted of a misdemeanor, and had never been convicted of drug trafficking. *Id.* at ¶ 10. The *Stonitsch* court expressed concern that misleading information had been presented to the judge in order to obtain the warrant, and determined that this contributed to its determination that it was unreasonable to rely on the affidavit in issuing the warrant. *Id.* The court also rejected an argument relying on evidence of prior drug activity in an attempt to identify the appellant as a drug dealer. The court stressed that this argument "dances dangerously close to the sentiment: 'Once a drug dealer, always a drug dealer.' The state cannot wield a years-old drug investigation (that yielded only a misdemeanor conviction) as a scarlet letter, obviating its burden to produce a present showing of probable cause." (Emphasis deleted.) *Id.* at ¶ 11, citing *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932).

{¶43} The *Stonitsch* court heavily relied on an Eighth District case which described the effect of erroneous information within an affidavit. *State v. Weimer*, 8th Dist. Cuyahoga No. 92094, 2009-Ohio-4983. The *Weimer* court explained that when an affidavit contains misleading statements:

[A] court considering whether to suppress evidence based on an allegation that the underlying affidavit contained false statements must apply a two-part test: (1) whether the defendant has proven by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements and (2) whether the affidavit, without the false statements * * * provides the requisite probable cause to sustain the warrant.

*Id.* at ¶ 32.

**{¶44}** It is unclear whether Dep. Schwarck's misstatements were the result of lackluster effort or an attempt to mislead the court. Although he is correct in that both the offense he described and the offense with which Appellant was actually charged are drug based crimes, one is a misdemeanor and one a felony. It is also true that he specifically averred that he corroborated the prior drug possession arrest through a computer search. Dep. Schwarck allegedly obtained a copy of Appellant's record. As there is no indication that this record contained false information, this appears to lead to the conclusion that he was either careless in his review or that he did not actually review the information he received. From this record before us, we cannot be certain of Dep. Schwarck's intent.

***{¶45}*** Regardless, based on the totality of the circumstances, Dep. Schwarck's affidavit failed to provide critical information learned during the investigation. Among the missing evidence is any sort of timeline, information regarding the number of individuals who visited the room, and information regarding the criminal records for these visitors, if any. In addition, the warrant contained unverified hearsay and contained false information that casts doubt on the adequacy of the investigation regarding both Appellant's previous criminal charges and how his identity as the person who rented the

room was investigated. While the state relied on witness testimony to fill some of these gaps at the suppression hearing, the record reveals this amounted to improper bolstering.

**{¶46}** Due to these circumstances, particularly the lack of any timeline, this bare-bones affidavit did not provide a fair probability that contraband or evidence of a crime would be found in room 208 following a time period of what appears to be, at the least, several hours after a housekeeper observed possible evidence of the consumption of drugs. A warrant was used to search room 208 and seize, among other things "all items related to drug trafficking." However, this warrant was issued based on an affidavit that did not support any search, and certainly not one that seems geared towards drug trafficking.

**{¶47}** Equally problematic, the judgment entry reveals that the trial court improperly relied on several facts clearly omitted from the affidavit in making his determination not to suppress evidence in this case. First, the court relied on the multiple phone calls from the hotel staff to law enforcement. However, the first phone call from the manager to Sgt. Stewart is not mentioned in the affidavit. Second, the court heavily relied on the presence of at least six individuals with prior drug history who allegedly visited the room. However, only one individual is mentioned in the affidavit. Third, and perhaps most significantly, the court relied on the officers' prior experience with drug investigations at this particular hotel, another fact entirely absent in the affidavit. In particular, the court relied on testimony from Dep. Schwarck that "[h]e has never received unreliable information from those at the Inn. He always relies on their reports." (4/27/21 J.E., p. 1.) Again, this information is conspicuously absent from the affidavit and cannot be reasonably gleaned from anything contained in the four corners of this affidavit.

**{¶48}** The court also relied on an erroneous belief that the hotel manager provided Dep. Schwarck with a copy of a driver license on file belonging to Appellant. Dep. Schwarck specifically testified that he relied on the manager's statement that the license belonged to Appellant, and did not independently view the license. Again, while the affidavit appears to indicate Dep. Schwarck did conduct an independent investigation but he did not, there is no other information in the affidavit to indicate why this hearsay was deemed reliable.

**{¶49}** Any information, inferences or assumptions that an officer may have had when drawing conclusions must be specified within the affidavit offered in support of the search warrant or cannot be considered by a judge at a subsequent suppression hearing. *Castagnola* at ¶ 101-102. The court's consideration of these facts, which were clearly not contained within the affidavit, is contrary to the well-established law in Ohio and is error. See *Castagnola, supra.*

**{¶50}** "[A]ll evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However, where "the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, * * * the extreme sanction of exclusion is inappropriate." *United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984)

**{¶51}** Turning to the issue of whether the evidence should have been excluded in this case, pursuant to the United States Supreme Court, there are four scenarios that render an officer's reliance on a warrant objectively unreasonable:

Case No. 21 BE 0024

(1) the magistrate or judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the issuing magistrate wholly abandoned his judicial role; (3) an officer purports to rely upon a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; (4) depending on the circumstances of the particular case, the warrant is so facially deficient that the executing officers cannot reasonably presume it valid.

*Weimer* at ¶ 45, citing *George, supra*, at 331; *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**{¶52}** "The good-faith exception does not allow police to rely blindly upon a judge's issuance of a warrant, but instead requires all law enforcement officials to have some 'minimum level of knowledge of the law's requirements.' " *Weimer* at ¶ 46. "Ohio courts have generally held police officers responsible for knowing not only when the warrant is based on a conclusory 'bare-bones' affidavit, but also for knowing whether allegations have sufficient factual basis or require further corroboration, and whether observed facts reasonably lead to an inference of wrongdoing." *Id.* at ¶ 47.

**{¶53}** Here, we have a conclusory, bare-bones affidavit that omits critical information Dep. Schwarck may have actually possessed and included incorrect or misleading information due to either carelessness or intentional indifference to the truth. The record reveals that the affidavit securing the warrant in this matter is so facially deficient the officer could not have relied on it, despite the fact that if all the information

Case No. 21 BE 0024

actually known to the officer had been included within the affidavit, it likely would have established probable cause.

**{¶54}** While the search ultimately revealed evidence of drug activity, "[t]here is always a temptation in criminal cases to let the end justify the means, but as guardians of the Constitution, we must resist that temptation." *Castagnola* at ¶ 104, citing *State v. Gardner*, 135 Ohio St.3d 99, 2012-Ohio-5683, 984 N.E.2d 1025, ¶ 24.

**{¶55}** As such, Appellant's first assignment of error has merit and is sustained.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED BY FINDING THE SEARCH WARRANT TO BE VALID AND NOT SUPPRESSING THE RESULTS OF THE SEARCH.

ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING THE DEFENDANT-APPELLANT TO A MAXIMUM SENTENCE ON COUNT I.

**{¶56}** Appellant argues that the warrant did not authorize a search of his person and was expressly limited to the hotel room. In addition, he argues that the search warrant authorized the seizure of items consistent with drug trafficking but the affidavit only suggested evidence of drug possession, a vastly different offense.

**{¶57}** The state repeats its arguments within the first assignment of error.

**{¶58}** Appellant also argues that his sentence constitutes an abuse of discretion as the court did not appropriately rely on the R.C. 2929.12 and R.C. 2929.13 factors and is inconsistent with R.C. 2929.11.

Case No. 21 BE 0024

**{¶59}** The state responds by arguing that a felony sentence is not reviewed for an abuse of discretion. Instead, it is reviewed for a determination of whether the sentence is contrary to law. Here, the state contends that the record supports Appellant's sentence.

**{¶60}** Because the affidavit in this matter is invalid and the warrant should not have issued, these assignments of error are moot.

Conclusion

**{¶61}** Appellant argues that the affidavit in support of a search warrant is deficient. Appellant also argues that the search was improperly extended to his person, which was not permitted by the search warrant. Finally, Appellant argues the trial court abused its discretion in sentencing Appellant. For the reasons provided, Appellant's argument regarding the affidavit has merit and the evidence obtained from the subsequent search made pursuant to the warrant based on this deficient affidavit should have been excluded. This determination renders his remaining arguments moot. The judgment of the trial court is reversed. Appellant's conviction is vacated and the matter is remanded for a determination of whether sufficient evidence exists on which to try Appellant.

Donofrio, P.J., concurs.

D'Apolito, J., concurs.

---

For the reasons stated in the Opinion rendered herein, Appellant's first assignment of error is sustained and his remaining assignments are moot. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is reversed and Appellant's conviction is vacated. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**