[Cite as *State v. Smith*, 2024-Ohio-5280.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

EDWARD T. SMITH,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 NO 0512**

---

Criminal Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. 222-2045

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Dave Yost*, Ohio Attorney General and *Atty. Andrea K. Boyd*, Assistant Ohio General, for Plaintiff-Appellee

*Atty. Wesley A. Johnston*, for Defendant-Appellant

Dated:  October 29, 2024

**WAITE, J.**

{¶1} Appellant Edward Smith appeals an October 30, 2023 judgment entry of the Noble County Court of Common Pleas convicting him on multiple counts of violating two protection orders and improperly handling a firearm in a motor vehicle. Appellant challenges a motion to suppress ruling, the validity of his no contest plea, and the effectiveness of his trial counsel. For the following reasons, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} The initial victim in this matter was Nicole Coil, Washington County Prosecutor. However, none of the eventual charges Appellant faced involved Coil, directly. Instead, his charged offenses were rooted in drug and weapon possession.

{¶3} Appellant has a lengthy criminal history which led to his familiarity and contact with Prosecutor Coil and several police officers. Appellant did not think favorably of the prosecutor or the police officers, and he had conveyed his sentiments to them.

{¶4} Appellant began a practice of interacting with these individuals through social media, particularly Facebook. Appellant used his own Facebook account to contact Detective Ryan Huffman, and sent what Det. Huffman characterized as harassing and threatening correspondence. Appellant obtained a photograph of Det. Huffman with his wife and children, and posted it on his own account. Det. Huffman viewed this as harassment and threatening behavior. Appellant also sent Det. Huffman's wife a social media message, claiming that he intended to take legal action against Det. Huffman after his recent arrest resulted in a dismissal of the charged offense.

{¶5} Appellant also had dealings with Prosecutor Coil, and made untruthful statements about her during a court hearing. Sometime thereafter, Det. Huffman noticed a Facebook page in the name of Prosecutor Coil which used a photograph of Prosecutor Coil that had been posted to her campaign Facebook account. One post on the new account stated: "all I cared about was convictions, and it did not matter if the person was innocent or guilty." (Exh. B.) This post appeared to be from the prosecutor. There was no indication on the page or post that it was a parody, or that it was not directly maintained and controlled by Prosecutor Coil. When Det. Huffman informed Prosecutor Coil of the duplicate page, she took legal action to discover its owner.

{¶6} On August 13, 2021, a search warrant regarding the duplicate account was obtained and served on Facebook. From this warrant, investigators learned the page had been created on August 12, 2021 and deactivated or deleted the following day. The warrant uncovered two IP addresses that were associated with Appellant. This led police to focus their attention on him and his lengthy criminal history, which revealed "an ususually high number of menacing arrests and convictions." (Appellee's Brf., p. 2.)

{¶7} Investigators then obtained a search warrant for Appellant's residence, to search for, and seize, electronic devices and data storage that could contain evidence linking Appellant to the Facebook posts, as these formed the alleged offense at the time. The warrant was executed on October 14, 2021. It led to the discovery, not only of the relevant devices, but also marijuana, drug paraphernalia, and a firearm. The marijuana was in plain view when the warrant was executed and Appellant conceded that he had more of the drug in the house, and offered to lead police to its location. However, officers decided it was more prudent to obtain a second warrant, instead, particularly due to the

Case No. 23 NO 0512

overwhelming odor of marijuana in the house. In addition, officers noticed a firearm attached to a magnetic holder next to the steering wheel of Appellant's truck, which was parked in the driveway. In the request for the second warrant, the officers sought to search for drugs and firearms. After execution of this warrant, officers were able to seize the weapon and discovered it was loaded with a magazine.

{¶8} As a result, on May 16, 2022, Appellant was indicted on: one count of violating a protection order, a felony of the third degree in violation of R.C. 2919.27 with an attenuated firearm specification in violation of R.C. 2941.141(A); one count of improperly handling a firearm in a motor vehicle, a felony of the fourth degree in violation of R.C. 2923.16; and one count of violating a protection order, a misdemeanor in violation of R.C. 2919.27. Appellant was not charged with any crime directly relating to the duplicative Facebook account. Appellant had been subject to two prior civil stalking protection orders which were in effect at the time the firearm was discovered, leading to the charge regarding violation of the order(s).

{¶9} After several delays, including delay caused by withdrawal of Appellant's counsel due to Appellant's behavior, and delay caused when newly appointed counsel sought a continuance to evaluate the case, counsel filed an unsuccessful motion to suppress and an unsuccessful motion to dismiss the firearm charges based on Second Amendment grounds.

{¶10} On October 27, 2023, Appellant pleaded no contest to all of the offenses as charged within the indictment, except for the firearm specification attached to count one, which the state agreed to dismiss. Prior to actually entering his plea, Appellant orally

moved to dismiss the entire case based on speedy trial grounds, and raised a motion to dismiss based on First Amendment grounds. Both oral motions were overruled.

{¶11} Over the state's objection, the court sentenced Appellant to one year of unsupervised, non-reporting probation. The court's later judgment entry specified that the probation was to terminate on October 27, 2024.

{¶12} Apparently, Appellant violated the terms of his probation. On January 2, 2024, the state filed a motion to revoke probation after discovering Appellant posted a photograph to his Facebook page that showed him in possession of a firearm. After learning that Appellant was no longer a resident of the State of Ohio, the state withdrew its motion.

<u>ASSIGNMENT OF ERROR NO. 1</u>

The trial court improperly denied the Appellant's motion to suppress.

{¶13} Appellant first challenges the court's denial of his motion to suppress. Appellant's arguments, here and throughout his brief, are disjointed and confusing, but it appears that Appellant takes issue with two of the three search warrants in this case: one issued on October 13, 2021 (the "technology warrant") and one on October 14, 2021 (the "contraband warrant"). We note that Appellant does not challenge the original search warrant, which was served on Facebook. As Appellant does not raise any challenge to this original warrant, he has waived any challenge to the warrant and the information that was obtained when it was served.

{¶14} The second warrant, the technology warrant, was obtained in order to search Appellant's home for purposes of retrieving media storage devices related to the

duplicate Facebook account. The contraband warrant, the third warrant, focused on Appellant's vehicle. While the technology warrant was obtained on October 13th, officers did not execute the search until the next day, October 14th. During execution of this warrant, officers discovered contraband and obtained the third warrant. Again, both warrants were executed on the same date, although they were obtained one day apart.

{¶15} A motion to suppress presents mixed issues of law and fact. *State v. Lake*, 2003-Ohio-332, ¶ 12 (7th Dist.), citing *State v. Jedd*, 146 Ohio App.3d 167, 171 (4th Dist. 2001). If a trial court's findings of fact are supported by competent credible evidence, an appellate court must accept them. *Id.* The appellate court must then determine whether the trial court's decision met the applicable legal standard. *Id.*

{¶16} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures and require warrants to be particular and supported by probable cause." *State v. Telshaw*, 2011-Ohio-3373, ¶ 12 (7th Dist.).

{¶17} "In order for a search or seizure to be lawful, there must be probable cause to believe evidence of criminal activity will be found and the search or seizure must be executed pursuant to a warrant, unless an exception to the warrant requirement exists." *State v. Smith*, 2023-Ohio-3587, ¶ 31, (7th Dist.), citing *State v. Ward*, 2011-Ohio-3183, ¶ 33 (7th Dist.).

In determining the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of

persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Hilliard*, 2022-Ohio-2849, ¶ 16 (7th Dist.), citing *State v. Quin*, 2021-Ohio-4205, ¶ 8 (5th Dist.); *State v. George*, 45 Ohio St.3d 325 (1980), at paragraph one of the syllabus; *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983).

**{¶18}** "When oral testimony is not offered in support of a search-warrant affidavit, the magistrate determines the sufficiency by 'evaluating only [the facts alleged within] the four corners of the affidavit and [applying] an objective reasonableness standard.' " *Hilliard* at ¶ 17. *State v. Castagnola*, 2015-Ohio-1565, ¶ 39, citing *United States v. Richards*, 659 F.3d 527, 559, fn. 11 (6th Cir. 2011), (Moore, J., concurring in judgment only); *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).

**{¶19}** "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " (Emphasis deleted.) *Hilliard* at ¶ 19, citing *State v. George*, 45 Ohio St.3d 325, 329 (1989), citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969).

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*George* at 329, citing *Gates, supra*.

{¶20} The Ohio Supreme Court has cautioned reviewing courts that the standard of review is not *de novo*, but instead, courts are to conduct a review of whether the issuing magistrate or judge had a " 'substantial basis for . . . concluding' that probable cause existed." *Hilliard* at ¶ 19, citing *George* at 329.

*October 13, 2021 Technology Warrant*

{¶21} Appellant challenges both the lack of particularity and nexus of the warrant. Appellant also argues that his behavior in creating what he calls a parody Facebook page is protected by First Amendment speech that cannot form the basis for probable cause.

{¶22} Beginning with the lack of particularity, Appellant argues that the warrant is overbroad, as it authorized a search for all "devices capable of sharing data." However, the warrant specifically linked only a single device, his cell phone, to the offense. This leads to his nexus argument, where he contends that no facts were adduced as to why officers believed that evidence would be found on devices other than the cell phone.

{¶23} An affidavit for this search warrant was filled out by Detective Alyssa Dolly. That affidavit stated, in relevant part: "on August 25, 2021 I received the content for this account from Facebook Inc. I reviewed the account in an attempt to identify who opened the account. The account was activated on August 12, 2021 and deactivated on August 13, 2021. The device used to open the account was an iPhone 12." (Affidavit for Search Warrant.)

{¶24} Appellant's argument ignores the fact that while one device was used to open the Facebook account, any device could have been used to access or post to that account. At the time the warrant was issued, Appellant's phone was his only known device, and was of interest due to its role in creating the page. However, investigators

were not just interested in the page's creation, they were also interested in the subsequent posting activity on the account.  Thus, they sought any device that could have been used to access this page, in order to determine if any other device Appellant used contained any information related to the account.

{¶25} Appellant next contends that the account was a parody page, which is protected speech under the First Amendment.  He argues that protected speech cannot form the basis of probable cause.

{¶26} The right to freedom of speech is governed by the First Amendment to the United States Constitution and applies to the states through the Fourteenth Amendment. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend. I.  In addition, the Ohio Constitution affords freedom of speech:

> Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. In all criminal prosecutions for libel, the truth may be given in evidence to the jury, and if it shall appear to the jury, that the matter charged as libelous is true, and was published with good motives, and for justifiable ends, the party shall be acquitted.

Ohio Const., article I, § 11.

Case No. 23 NO 0512

**{¶27}** The Ohio Supreme Court has held that "the free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment, and that the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution." *State v. Adams*, 2004-Ohio-3199, ¶ 15 (7th Dist.), citing *Eastwood Mall, Inc. v. Slanco*, 68 Ohio St.3d 221, 222 (1994); *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals*, 63 Ohio St.3d 354, 362-363 (1992).

**{¶28}** However, as Appellant concedes, the First Amendment is not absolute. Some forms of speech may be regulated, "i.e., threatening words, obscene speech, fighting words, speech that interferes with the rights of others, speech that creates a clear and present danger, and defamatory speech." *State v. Plants*, 2010-Ohio-2930, ¶ 46 (5th Dist.).

**{¶29}** The state described Appellant's statements, here, (Facebook posts and messages, as well as the account as a whole) as defamatory. While Appellant claims that the account was meant as a parody, there is no indication or label designating the page in this fashion. In fact, it is apparent that the page was meant as an impersonation of the prosecuting attorney.

**{¶30}** Defamatory speech is not protected by the First Amendment. The post, which looks like it was originated by Prosecutor Coil, appears to be intended to make her seem unwilling to serve in her elected position in an ethical manner, thus could certainly be seen as defamatory. Because there is no evidence demonstrating the page was meant as parody and the post appears defamatory, there is no support for his argument that in creating the page and its posts Appellant was engaged in protected speech.

{¶31} Appellant also raises arguments related to the search itself. Appellant claims that Det. Dolly conveyed to him that one of the charges being pursued was identity theft, however, the warrant only listed the offense of telecommunication harassment. While Appellant challenges that the elements of neither offense was met, these arguments are irrelevant to the validity of a search warrant, which is based on probable cause.

{¶32} The record demonstrates that the October 13, 2021 technology search warrant is supported by adequate probable cause and established with sufficient particularity the items relevant to the offenses then at issue.

*October 14, 2021 Contraband Warrant*

{¶33} Appellant also challenges the scope of the contraband warrant. He contends that officers' discovery of a small amount of marijuana does not justify a search of the entire house. Appellant also argues that the officers did not have the right to view the interior of his vehicle, despite the fact that it was parked in his driveway and the firearm was in plain sight. Appellant contends that the automobile exception to the warrant requirement does not apply to a vehicle found on curtilage, and the warrant only permitted a search of the house. Appellant urges that the gun was located in a dash holster, which is a permissible way to store an unloaded firearm in a vehicle. He also maintains that even though the firearm was loaded, the officers would not have been able to determine if it was loaded simply by viewing the gun through the window.

{¶34} As earlier stated, this warrant was issued only after the discovery of marijuana and the firearm during the search of Appellant's home pursuant to the

technology warrant. The discovery of these items resulted in police seeking and obtaining another search warrant, specifically aimed at drugs, drug paraphernalia, or firearms.

{¶35} During the execution of the technology warrant, police officers immediately smelled the odor of marijuana. The strength of the odor was significant, leading one officer to remark to the others that "the house smells like a marijuana grow." (Motion to Suppress Hrg., p. 52.) Officers also observed marijuana in plain sight near one of the computers, which was located in a home office. Appellant conceded that he had more marijuana in the house and offered to show officers its location. Detective Brent McKee decided it was necessary to secure an additional search warrant.

{¶36} While recreational marijuana is now legal to some extent in Ohio, it was not at the time of this search. Despite the fact that medical marijuana was legal at this time, we have previously held "[t]he fact that illegal marijuana and legal forms of hemp have the same odor is irrelevant so long as some forms of marijuana remain illegal." *State v. Withrow*, 2022-Ohio-2850, ¶ 19 (7th Dist.). Thus, evidence of the odor of marijuana sufficiently formed probable cause in this case.

{¶37} During the original technology search, officers also spotted a firearm in Appellant's truck, which was parked in the driveway. Appellant had been seen driving this truck. When officers walked past the truck, they could see the firearm mounted in a magnetic holster near the steering wheel. While officers could not immediately tell whether it was loaded, when they recovered the firearm pursuant to the warrant it was loaded with a magazine.

{¶38} It is important to note that officers did not attempt to seize the weapon pursuant to the plain view exception to the warrant requirement. Instead, observation of

the firearm was used as probable cause to obtain a search warrant. Contrary to Appellant's arguments, police officers executed a valid warrant to search the house by means of the technology warrant. Officers were able to view the firearm by merely walking past the truck, and they obtained a second warrant to search both the house and truck for drugs and guns. As to Appellant's contention that police officers could not tell if the weapon was loaded by merely looking through the window, we again repeat that officers need only probable cause, not definite proof, in order to secure a search warrant.

**{¶39}** Based on this record, both search warrants were properly supported and issued in this matter. Appellant's first assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 2

The trial court improperly denied his Motion to Dismiss, the underlying predicate criminal charge against the Defendant in this case, i.e Improperly Handling Firearms in a Motor Vehicle in violation of R.C. 2923.16, F-4 is unconstitutional under the Second Amendment of the United States Constitution and therefore that charge, as well as the companion charges of Violating a Protection Order in violation of R.C. 2919.27, F-3, M-1, which are themselves predicated upon the Improperly Handling Firearms in a Motor Vehicle charge[.]

## ASSIGNMENT OF ERROR NO. 5

Appellant's motion to dismiss based on speedy trial violations was impro[er;y [sic] dismisse [sic][.]

**{¶40}** On April 14, 2023, Appellant's counsel filed a motion to suppress based on Second Amendment grounds. The motion is based on a recent case arising out of the United State Supreme Court, *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022). *Bruen* targeted a New York statute which provided that possessing a firearm without a license, inside or outside of one's home, constituted a criminal offense. *Id.* at 1. The statue further provided that in order to carry a firearm, an individual must obtain a license, if proper cause (as defined within the statute) could be established. The *Bruen* Court struck down the statute and in so doing created a new standard:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961).

*Id.* at 2126.

**{¶41}** Here, Appellant's rights guaranteed by the Second Amendment had been limited, due to a previous conviction for a domestic violence offense. The United States Supreme Court and two Ohio appellate districts have recently addressed similar cases.

**{¶42}** The United States Supreme Court answered the question of whether a domestic violence restraining order that includes a prohibition on firearms runs afoul of the Second Amendment in light of *Bruen.* The Court found that it did not in *United States v. Rahimi,* 144 S.Ct. 1889, 1898 (2024). The Court ultimately held that "when a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may consistent with the Second Amendment be banned from possessing firearms while the order is in effect." *Id.* at 1896. The Court explained that the Second Amendment, like all rights, is not absolute. *Id.* And, historically, "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms. *Id.*

**{¶43}** In Ohio, the Third District found that, under *Bruen,* R.C. 2929.141(A) is constitutional and is consistent with the Nation's historical treatment of firearm regulations. *State v. Jones*, 2024-Ohio-2959, ¶ 22 (3rd Dist.). While R.C. 2929.141(A) is not identical to the statute used to obtain Appellant's restraining order, it is similar. R.C. 2929.141(A) provides an enhancement to an offense where it is committed while the offender possesses a firearm. *Id.* at ¶ 22. The *Jones* Court explained that nationally, there is a history of allowing sentence enhancements where an offender possessed a firearm while committing an offense. *Id.* The Court explained that "[c]ritically, 'the people' whose right to bear arms is protected by the Second Amendment are the 'law-abiding,' responsible citizens, not those who would violate the nation's laws.' " *Id.*, quoting *United States v. Love*, 647 F.Supp.3d 664, 670 (N.D. Ind. 2022); *Bruen* at 32.

**{¶44}** The Fifth District addressed another similar statute, R.C. 2929.13(A)(2) the weapons disability statute, in *State v. Windland*, 2024-Ohio-1827 (5th Dist.). In finding

the statute did not run afoul of the Second Amendment, the Court relied on a plethora of federal cases which upheld firearm restrictions preventing individuals who are viewed as dangerous from possessing a firearm. *Id.* at ¶ 19.

**{¶45}** Based on all of the above, the trial court appropriately determined there was no Second Amendment issue raised here, and properly denied Appellant's motion to dismiss his gun charges.

**{¶46}** Next, Appellant challenges the court's denial of his motion to dismiss based on speedy trial grounds. Appellant contends that when the trial court fails to provide the parties with an official speedy trial count, the matter must be dismissed. There is neither statutory nor caselaw support for this proposition. The law in Ohio is very clear: the court or either party may invoke speedy trial concerns when they have conducted the appropriate speedy trial analysis, which involves counting the days that have passed since the arrest after deducting any appropriately tolled time.

**{¶47}** Review of a trial court's decision regarding a motion to dismiss based on a violation of the speedy trial provisions involves a mixed question of law and fact. *State v. High*, 143 Ohio App.3d 232 (7th Dist. 2001), citing *State v. McDonald*, 1999 WL 476253 (7th Dist. June 30, 1999). The trial court's findings of fact are given deference if supported by competent, credible evidence. *Id.* However, a reviewing court must independently review whether the trial court properly applied the law to the facts of the case. *Id.* Additionally, an appellate court must strictly construe the relevant statutes against the state. *Id.*, citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57 (1996).

**{¶48}** A criminal defendant must be brought to trial within the time frame provided by the statute. *State v. Singer*, 50 Ohio St.2d 103, 105 (1977); *see also State v. Cutcher*,

56 Ohio St.2d 383, 384 (1978). As the general assembly recognized that some degree of flexibility is necessary, extensions are provided based on certain circumstances which are referred to as "tolling events." *State v. Lee*, 48 Ohio St.2d 208, 209. R.C. 2945.72 contains an exhaustive list of events and circumstances that extend the speedy trial limitations.

{¶49} In accordance with R.C. 2945.72(A)-(I) the speedy trial time frame is extended for any period of time where the defendant: is unavailable for hearing or trial; is mentally or physically incompetent to stand trial; lacks counsel; causes delay by neglect or improper acts; files a motion, proceeding, or other action; seeks removal or change of venue; has his or her trial stayed due to a statutory requirement or order of another court; has his or her own motion for continuance granted and when any period of reasonable continuance is granted other than on defendant's own motion; files an appeal.

{¶50} Appellant urges that it is impossible to determine a speedy trial violation without the aid of the trial court deciding what filing or action constitutes a tolling event. Appellant is mistaken. And while the state appears to assert that the clock begins to run when the case is filed, the established law in Ohio provides that the speedy trial clock begins to run the day after a defendant is arrested. *State v. Brown*, 2005-Ohio-2939 (7th Dist.). The exact date of Appellant's arrest is not readily apparent from this record. However, a warrant for his arrest was issued on May 16, 2022 and a bond hearing was held the next day. Thus, we will use this date to begin our analysis.

{¶51} Appellant was allowed a recognizance bond on May 17, 2022, thus the triple count provision does not apply and Appellant needed to be brought to trial within 270 days of arrest. On June 27, 2022, Appellant's counsel filed a request for discovery. A

defendant's discovery request tolls the speedy trial clock. *State v. Helms*, 2015-Ohio-1708, ¶ 20 (7th Dist.), citing *State v. Brown*, 2002-Ohio-7040, ¶ 26. The state completed discovery on July 27, 2022. At this point, 41 days are attributed to the speedy trial calculation and the clock began to run again on July 28, 2022.

{¶52} On August 22, 2022, Appellant's counsel filed a motion to withdraw based on a conflict with Appellant. Up to this point, 66 days are attributed to the speedy trial clock. The appointment of new counsel due to a conflict with a defendant is a reasonable basis to continue a trial and is a tolling event. *State v. Christian*, 2014-Ohio-2590, ¶ 11 (7th Dist.). While the clock would ordinarily begin to again run after the appointment of new counsel, Appellant's new counsel filed a continuance the day he was appointed, and the matter was continued until October 13, 2022. Thus, the clock resumed running on October 13, 2022. Appellant's counsel then sought leave to file a motion to suppress, but had not yet prepared such a motion. It is unclear whether merely seeking leave to file an unprepared motion would toll speedy trial time in this case. If the time is not tolled, 66 days had lapsed on the clock as of October 13, 2022 and would not toll until March 13, 2023, when counsel actually filed the motion to suppress, at which time there were 119 days on the speedy trial clock. On April 14, 2023, Appellant filed a motion dismiss, which again tolled the clock.

{¶53} The clock resumed on August 28, 2023, when the court denied all pending motions. Appellant raised his oral motion to dismiss based on speedy trial grounds on the same date as the plea hearing, October 27, 2023. At this point, at most 180 days had passed. Again, this count is less if the court decided that time was tolled immediately upon filing for leave to file a motion to suppress, instead of the date on which the motion

was actually filed. Based on this record, the court properly overruled the motion to dismiss based on speedy trial grounds.

**{¶54}** Accordingly, Appellant's second and fifth assignments of error are without merit and are overruled.

ASSIGNMENT OF ERROR NO. 3

The Trial Court Failed to Strictly Comply with Rule 11 Consitutional [sic] Requirements when taking plea.

**{¶55}** Again, we note that Appellant's arguments are not clear. He seems to challenge whether the trial court properly found him guilty, and whether the court referred to the indictment at the plea hearing.

**{¶56}** A review of the plea hearing transcript reveals that the court used the word "indictment" at least fifteen times, and repeatedly addressed the specific offenses contained within that indictment multiple times.

**{¶57}** When determining guilt, the court stated at the hearing: "I'm going to upon those pleas find you guilty and I'm going to impose the sentence that I promised." (Plea Hrg., p. 21.)

**{¶58}** Appellant pleaded no contest to violating a protection order, a felony of the third degree, improperly handling a firearm in a motor vehicle, a felony of the fourth degree, and violating a protection order, a misdemeanor of the first degree.

**{¶59}** While the state contends that providing a factual basis on which to base guilt is not a requirement of Crim.R. 11, this is not entirely accurate. We have previously acknowledged that where a defendant pleads no contest to a misdemeanor offense, that

plea "may not be the basis for a finding of guilt without an explanation of circumstances that includes a statement of the facts which support all of the essential elements of the offenses. However, a criminal defendant may waive the right to an explanation of circumstances when pleading guilty." (Internal citations omitted.) *State v. Howell*, 2005-Ohio-2927 (7th Dist.).

**{¶60}** However, where a criminal defendant pleads no contest to a felony charge, no factual basis need be established when accepting the plea. *State v. LaRosa*, 2021-Ohio-4060, fn. 1. There is no clear determination of whether the recitation of facts must be given where there is a mix of felony and misdemeanor cases involved in the plea. Neither party addresses this scenario.

**{¶61}** It is apparent from this record that Appellant was well aware of the facts supporting his conviction, here. The trial court addressed these throughout its discussion with Appellant. Also, we note that of the three offenses, two were felonies. We cannot find error in the trial court's acceptance of the plea nor in its decision to find Appellant guilty following his no contest pleas. As such, Appellant's third assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 4

> Appellant was denied effective Assistaqnce [sic] of Counsel as Guaranteed by Section 10, Article 1, of the Ohio Constitution and The Sixth And Fourteenth Amendment of the United States Constitution.

**{¶62}** The test for an ineffective assistance of counsel claim is two-part: whether trial counsel's performance was deficient and, if so, whether the deficiency resulted in

Case No. 23 NO 0512

prejudice. *State v. White*, 2014-Ohio-4153, ¶ 18 (7th Dist.), citing *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Williams*, 2003-Ohio-4396, ¶ 107.

**{¶63}** In order to prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Lyons*, 2015-Ohio-3325, ¶ 11 (7th Dist.), citing *Strickland* at 694. The appellant must affirmatively prove the alleged prejudice occurred. *Id.* at 693.

**{¶64}** As both prongs are necessary, if one prong of the *Strickland* test is not met, an appellate court need not address the remaining prong. *Id.* at 697. The appellant bears the burden of proof on the issue of counsel's effectiveness, and in Ohio, a licensed attorney is presumed competent. *State v. Carter*, 2001 WL 741571 (7th Dist. June 29, 2001), citing *State v. Calhoun*, 86 Ohio St.3d 279, 289, (1999).

**{¶65}** "When a claim for ineffective assistance of counsel is made based on failure to file an objection or a motion, the appellant must demonstrate that the objection or motion had a reasonable probability of success." *State v. Rowbotham*, 2022-Ohio-926, ¶ 56, (7th Dist.), citing *State v. Saffell*, 2020-Ohio-7022, ¶ 51 (7th Dist.). "If the objection or motion would not have been successful, then the appellant cannot prevail on the ineffective assistance of counsel claim." *Id.*, citing *State v. Adkins*, 2005-Ohio-2577, ¶ 14 (4th Dist.)

**{¶66}** Appellant has failed to provide any substantive argument to support this alleged error. While he cites to counsel's failure to file a motion to dismiss and believes that the indictment failed to prove his guilt "on its face," he does not develop these

arguments in a manner that would allow this Court to review his arguments. For instance, although he contends that his counsel should have a filed a motion to dismiss on the basis that he is not prohibited from possessing a firearm, he must prove that such motion could have been successful if asserted. Because he fails to develop this argument, we cannot review whether it would have had merit if raised. Again, there is evidence in the record that Appellant was subject to a restraining order prohibiting him from possessing firearms. Appellant's trial counsel did file a motion to dismiss on similar grounds, which was denied. As to the argument regarding the indictment, again, Appellant raises no specific argument as to any deficiencies within the indictment. Our review has uncovered no apparent deficiencies in his indictment.

**{¶67}** Finally, Appellant claims to have been pressured into taking a plea, but offers no supporting facts in regard to this assertion. As discussed by the state, the possibility of a plea agreement arose during a September 28, 2023 status conference. At this time, the parties informed the court that they were close to resolving the matter through a plea agreement. Appellant's counsel informed the court that he had been communicating with Appellant regarding the agreement, but that he needed more time to adequately inform Appellant of its provisions and to answer his questions. Appellant entered his no contest plea on October 27, 2023. From this, it does not appear Appellant was in any way pressured into a plea. Instead, it seems that his counsel undertook great effort to inform Appellant and ensure he understood the agreement.

**{¶68}** As such, Appellant's fourth assignment of error is without merit and is overruled.

Conclusion

**{¶69}** Appellant challenges rulings on motions to suppress, the validity of his no contest plea, and the effectiveness of his trial counsel. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Hanni, J. concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**